Good morning. We have four cases this morning, and the first is number 20-1514, United States v. Scott, Mr. Schweitzer, and Mr. Zosima. Good morning, your honors. Brett Schweitzer of the Federal Defenders for Mr. Scott. At this time, I'd like to reserve three minutes for rebuttal, please. Thank you. Whether Hobbs Act robbery is currently a crime of violence under the guidelines turns on a simple question. When the commission narrowed the definition of extortion to threats of, quote, physical injury, was it talking about injury to the person or damage to property as well? The answer to that is clearly injury to the person. Assume for the moment, without taking anything away from Mr. Zosima, let's assume that Rodriguez, the NPO, governs, even though it's an NPO. Just, again, make that assumption. The difference here is you're in plain error land. If you follow Rodriguez, there's an error that affects substantive rights, etc. But on the second prong of plain error, is it plain in our circuit that this was an error in the reading of the sentencing guideline? I think it is, your honor. The circuits are now 4-0. The only thing that has changed since Rodriguez is the 11th Circuit has joined the unanimous other circuits in this holding. So the circuits are 4-0. This court obviously has not presidentially decided the matter, but that's not required for plain error. What about the fact that the 10th Circuit, and at least in the alternative, the 9th, approached this under the rule of lenity, assuming that the language is ambiguous? Which would indicate that people are not real sure that it's clear. It's true that one circuit has relied on lenity. I don't think that's enough to introduce unclarity under prong two. More importantly, plain error isn't just a headcount. Certainly the circuits are 4-0, 3-0, if you want to exclude the lenity ruling. But when we look past the headcount and we look at the merits of this, it's equally clear. The Commission always uses injury to refer to the person consistently throughout the guidelines. It always uses damage to talk about property damage. In the amendment process, the Commission specifically said they were limiting the definition to injury against the person. Rarely do we have a record on the merits that is so clear on this. And I would suggest that's why the Rodriguez court – one of the reasons why the Rodriguez court expressly stated that there was no need to reach lenity because this is absolutely clear. But prong two of Olano is plain, but it's plain in the sense of it has to be obvious. Prong one is just, is there legal error? That's an objective determination. You don't even get to prong two unless you have a legal error. But plain two takes that set of legal errors and said, how many of these are just really abundantly obvious? Certain things prosecutors can't say in closing, pretty obvious. Archer's prudence really does not describe anything about the categorical approach as obvious. And the only way that this case works out, the whole theory of error is premised on a multi-step categorical analysis that strikes me is not obvious. And so it may well be legal error. Rodriguez may be right. But Rodriguez is not precedental. And I'm not sure that anything about the categorical approach, which has been described by my colleagues is nonsensical, maybe even ludicrous, I believe, is not obvious. You can't say something's nonsensical and ludicrous, yet at the same time, abundantly obvious. What do you say to that? I think you certainly can say that. The criticism of the categorical approach is not that it is so opaque and difficult to apply. I mean, that's part of it. But the criticism is we disagree with this. But more importantly, this court, there are many, many cases in which this court has found plain error under the categorical approach. So categorical approach cannot ipso facto defeat a preserved argument. I would point the court off the top of my head to Dahl, which is sort of a United States versus Dahl DHL, which is sort of a landmark decision of this court from a few years ago. That was a plain error case. So I could list others. But the point is that that can't defeat prong two by itself. And again, when we look at the merits here, and I would just quote, this is from the sentencing condition when they made this amendment in 2016, quote, the definition of extortion in the proposed amendment requires that the threat be the threat of physical injury against the person. So this is not, you know, we're not, you know, faced with some, you know, you know, unclear. What did the commission mean? What does this stand for? We have a term of art that is consistently always used in the guidelines to be injury to a person. And it's again consistently used here, we have a statement of meaning in the amendment process, and we have four circuits. So, can I just, can I just, can I just, I'm sorry for interrupting, but let me just let me just push back a little. What's, what's left of prong two now. If prong two makes things like the categorical approach plain, if it makes other circuits that have reached this not on exactly the same rationale, all of them, still plain, when we have an absence of controlling precedent in this circuit, still plain, what's, what's left of plain? I mean, I mean, should we just say a lot is a three part test going forward. I mean we can't do that but but it certainly feels like it. What did, can you can you carve out, you know, what real estate plane currently occupies. Sure. And, and it's it's acres, Your Honor, there is plenty of room for denying claims on on on prompt to, there's a circuit split, there's no authority whatsoever. There's just a close call. You know, there was, you know, in, in, in the job to take case recently, it was, it was held that it wasn't the statutory construction wasn't plain error, and that defendant will therefore serve a sentence for something that's not a crime. So, this, this court is hardly applying clean air in the willy nilly fashion in a willy nilly fashion, and certainly in the sentencing context. There are, there's plenty of room to to find particular errors either clear or not clear. And my suggestion here would be that the only the only ruling that would be consistent with what the court has done in other cases, you know, with a 40, or shall we say three and a half to zero circuit count, and the clarity of the language here would be to say that this satisfies two. So, so really Your Honors. Aside from that, Rodriguez got it squarely right. There is no, there is, there is no real debate, I would suggest on on the merits of this. Again, I already mentioned we have the, the, the, the plain meaning as used in the guidelines of these terms we have the 2016 amendment. And, but I think it's crucially important to step back from those specific arguments and look at the context here in 2016 the commission engaged in a careful recalibration of 4b 1.2. And after that is when the circuit said, Okay, Hobbs act robbery is no longer a crime of violence, given this new definition extortion, the government took those cases and took its absurdity argument to the commission. And in 2018 the commission proposed to keep the extortion definition, and to introduce object robbery back into 4b 1.2 through the way it should be, which is through robbery. And so that is pending before the commission. I would suggest that this court would be on far out on a limb to create a circuit and get ahead of the commission by in a way that's actually inconsistent with the, with the amendment that they have proposed to 4b 1.2. That is by saying no extortion is actually hugely broad under the 2016 definition. Nobody can be commissioned is not going that direction. So I think in that context it's particularly inappropriate would be particularly appropriate for this court to sort of assert the role of the commission that in that way. And this is a very unique context is your honors are aware. This is a situation where this is how the process is supposed to work. Courts are supposed to look at the guidelines say this is what they mean. There's a, there's a quick. Unlike the legislative process in general, in Congress, there is a quick turnaround ability of the commission to digest that information gathers all the carefully studies all case law, and it can quickly make amendments. Every year. Now we've had in the past as you're aware we've had in the past few years, some vacancies on the on the commission that has that has slowed down the amendment process. Nobody can make predictions but I suspect with the with the change in the political situation, Washington, that may change there, there may be some more appointments, relatively soon. But more importantly, that doesn't that sort of vacuum doesn't give cause for this court to step in and and create a circuit split in a way in the direction of the court that this commission is not going. You may be right. It's the way things you read them going, but the issue really comes back to the very first question is this. If it's error, is it plain enough for playing their review, when we hear from Mr Zosma we'll get you back on rebuttal. Thank you. Thank you. Thank you. Good morning, Your Honor Robert Zosma on behalf of the government. Certainly the fact that this is on plane air review is a very significant thing. And the air here was not playing, but I do really want to focus on the air itself. Well, let's let's let's just let's just go. If you've got four circuits out there to one possibly to certainly the 10th and possibly the ninth. Even with rule of lenity lens some question. But then you've got Rodriguez, which, you know, would have answered everything had it been a presidential opinion. We have a decision in oh nine, United States be coal co le that says that you can have out of circuit authority that establishes the plainness of error. And in that case it was four circuits. Why not just follow call here. Plus, we have, we have the cherry on the top we have Rodriguez, which I'm not sure I would change a word of Rodriguez in terms of its analysis. Well, that's certainly something that I want to contest in terms of. I understand you want you want to do over but the point here is, aren't we in. There's no circuit that has gone the other way. We have some precedent in our circuit that says we looked other circuits and if they're all together. Then we could say that the error that something is clearly established. I do not dispute that I don't dispute that your honor, but this court of course is an independent court and an independent circuit. This court has said, I recognize what Cole says, but this court has also said frequently that the fact that a argument is plausible, the fact that this court may adopt it one day, does not make the argument the airplane. And even though four circuits have said this, my submission is that the extent of the analysis with all respect to those courts is not as thorough and not as robust as what we have advanced to this court. The, and then it would include the extent of the analysis with respect in the Rodriguez decision. Yeah, what is equivocal about Rodriguez. Oh, it's certainly not equivocal, but it but it's it's an error. And I, my main argument that I want to present your honor, is that even if we accept that this may be plain error. This fails at step one. This is not air to say that Hobbs act robbery is a crime of violence under the career offender guideline. The, and the other courts are simply mistaken. And this court has on many occasions, a broken apart from its sister circuits where appropriate upon taking a careful analysis that we encourage the court to undertake here. We, what this is all about. So you think judge Bebas was incorrect in Rodriguez, how he was incorrect in concluding that extortion that under the guidelines does not include a physical injury to property, the classic definition of extortion. The, the problem here is that if you interpret the guideline that way if you believe that the sentencing commission in 2016 decided that extortion offenses does not include attacks against property. That means that the sentencing commission in 2016 got together and not only eliminated Hobbs act robbery from the career offender guideline, the preeminent federal statute with regard to robbery affecting interstate commerce, but it also eliminated every other extortion statute in the country. The traditional definition of extortion is a threat to injure a person or property. We quote in our brief the very famous statement of representative Hobbs during the debate over the amendment of the Hobbs Act, in which he said, everyone knows the definition of robbery and extortion, and stated the classic definitions that the Supreme Court and this court have repeatedly stated ever since the thought that the sentencing commission when responding to the Johnson decision, and needing to adjust the career offender guideline got together and said, you know what, we're just going to eliminate extortion, even though extortion is still listed as an enumerated offense is just inconceivable, Judge Phipps recalls the use of terms like nonsensical and ludicrous And no doubt I, in my briefing to this court in numerous cases have exhausted my adjectives regarding the categorical approach as well. But this takes it to another level to say that the career offender guideline, which is focused on violent offenses and Congress's determination. But you've got another hurdle, and that is extortion for the 1.2 of the application that one talks about, it could be force or fear of physical injury or threat of physical injury. So, it's hard to think that physical injury could be to anything other than a person right. Not at all your honor and in fact the Hobbs Act itself in the very language of section 1951 of the Hobbs Act refers to injury to person or property where he uses the word physical violence to any person or property. It's in the Hobbs Act itself. If I say to you like my cell phone cracked, and it was physically injured you kind of look at me funny wouldn't you. I would but in the car, but in the well accepted definition of extortion in the language of the Hobbs Act itself in the exhaustive history of extortion law that we present in our brief, it is not that unusual at all. But we also have more than that your honor and a couple things I want to mention one is, we have the explanation of the commission itself, the commission when it made the gave its explanation of this adjustment to the definition of extortion said in the supplement in its amendment, exactly what it had in mind, it said that its intent was to limit the offense to those having an element of force or an element of fear threats, quote, a physical injury and quote, as opposed to non violent threats, such as injury to reputation. So they're making it very clear they are excluding what we call the Nardello type of. So they're, they're, again, talking about physical injury, and Mr Switzer points out that, you know, the commission has, has, has been looking at this, and if the commission messed up isn't it up to them to fix it to go your way. Well, there's no evidence whatsoever that the commission, with respect quote looked at this and decided, you know what we're not going to include Hobbs Act robbery and then they came back two years later, and said well maybe that wasn't such a good idea after all there's no proof of I mean, I mean the problem is this is when you make amendments. You sometimes change for one reason. Well intended change for one reason and then there's an unintended consequence of that change the change was either overbroad it removes something that you needed for something else. So you could say all day long this is what my intent is my intent is only to change for this one isolated reason. But if the way that you change it brings about a broader result. That just means that you need to change it again, not to say, hey, well, on or your intent, your narrow intent, when your change was inconsistent with that. If nothing else, doesn't that take us instead. There's uncertainty here. I mean, I mean, does, does the rule of lenity do any work in your view. I don't believe so, Your Honor, because again I don't believe one can make a credible statement that classic extortion is not a crime of violence, and no doubt sir it's absolutely correct that one can make a mistake in an amendment, but the commission here explicitly told us it was not making a mistake, it was simply excluding non violent threats such as injury to reputation. I want to make one such as it uses such as it's illustrative it's not exhaustive. Absolutely. Absolutely, Your Honor, but it puts a staggering amount of weight on the words, such as to say that you're asking us to put a also a staggering amount of weight on on on physical, where, when we look at other uses throughout the guidelines. It seems that would have been perfectly simple and saved us all being here to discuss this today had the commission use the language consistently has elsewhere to refer to property damage. If it wanted to include that language. Having used physical injury don't we need to look to the context in the guidelines and the consistent meaning of that that that phrase. Again, Your Honor, I believe in this context regarding the career fender guideline the categorical approach the Hobbes act language that the about the language of the guideline. I do need to reference the recent Nassir case the end bank decision of this court. Of course it's the court is aware of the government disagrees with the conclusion in this year, regarding the force of the commentary and, and the court has stayed the mandate and the government is evaluating what to do but assuming that Nassir is correct. It has a very important application here, which is the holding of Nassir of course is that the commentary to the guideline does not control, unless there's a clear ambiguity in the text itself that the guideline that the commentary is addressing. And here, what we have in the text of the guideline is the word extortion, the word that representative Hobbes said everyone knows the meaning of and of course everyone does know the meaning. And if that's true, then to then take this commentary which ambiguously uses the word physical to say that we have now eliminated every extortion offense from ever applying under 4b 1.2, and we've eliminated Hobbes act robbery, the preeminent federal robbery statute. That's not a proper application of the commentary consistent with the Nassir decision, the what it says in the guideline text is extortion extortion is the use of fear of threats of injury to person or property. It was in 1934 when they passed the anti racketeering act, and it's been that ever since the Sentencing Commission in 2016 did not sit down and decide, we are going to eliminate extortion, even though it says it as an enumerated defense in the guideline. So, there are numerous angles you can come at this from and it brings you back to the same place, which is, it is not a credible explanation of this guideline. It is not air, it's not certainly not plain air, given the ambiguities that we've discussed, and we do respectfully disagree with the other decisions which we believe with less analysis have come to the incorrect conclusion. The extortion provision in B says, instead of fear of physical injury take out physical, and you said, in effect, fear of injury to person or property. You'd be right. That's not what it says it uses the word physical, and anytime in the way we use standard English physical means harm to a human being. Well, again, I know I'm repeating myself, Your Honor, but, but I think it's important what the Hobbs access in section 1951 it's illegal to commit or threaten quote physical violence to any person or property. So the statute itself contemplates quote a physical action against property, and there's no reasonable way to look at the history. It also talks about actual or threatened force to among other things property. There are a number of different provisions I'm starting with the first paragraph, but under your reading, I mean, I mean, let's just say that physical only applies to bought something effect effectuated in the bottle. Right. Physical violence to personal property doesn't would mean violence, almost bodily afflicted it inflicted by another person to another person or property, it describes kind of the, it describes violence more than it does the object of violence under Hobbs. Is that is that where you're coming at this from are you saying something different. Well, I think stepping back around and where I'm coming at this from is that the purpose of the Hobbs Act as we lay out in our brief and everyone knows, was to address violence against people and property in order to extort the racketeer, the mobster, the And there's nothing that the Sentencing Commission has ever said that suggests that it does not view that as a paradigmatic crime of violence. Instead, we have this obscure amendment here in which they explicitly list extortion as an enumerated crime of violence. And then we face these arguments to say well they eliminated it anyway. That is just not a sensible reading of the language of history of the purpose of these provisions. Can I just add one clarification with regard to your brief says that page 12 and note to that. If we don't consider Hobbs Act robbery as a crime of violence that the offense level would be 21. It looks to me like it would be 19. Well, under this firearm guideline. But in this case, we're not actually dealing with a career offender application, but the use of the definition in the firearm guideline. That guideline imposes a base offense level of 24 if a person has two previous crimes of violence or controlled substance offenses. If the Hobbs Act. If this person's prior Hobbs Act robbery is not a crime of violence, then he does not have two prior predicates. He has one, which was a drug conviction. And that's a base offense level of 22. And so that's why I think the parties are in agreement, his offense level would go down by two and not by four. Thank you very much. I have one question. Go ahead. Can I I'd like to get your input on when we're thinking about the concept of plain error looking to other circuits. What significance is there to the fact that other circuits may have different rationales for the consistent outcome that they reach. Does that factor into whether the error is plain or not, or do we look to simply the outcome? No, I think that's very important. I think this court would consider every factor. I mean, the basic question here is you have a district court that is faced with an issue and no objection is presented. And what the Supreme Court has told us over and over is that we're not going to go back and correct an error. All proceedings are not perfect. We don't correct an error unless all of these stringent standards are met, including that it's plain. And I think what you have to consider is the lay of the land that's facing the trial judge at that point. And certainly the fact that you have other that there are other decisions in other circuits, it's important. But it's also important that the reasoning in those decisions is sometimes thin. And it's also important that it's inconsistent. That you have to look at the lay of the land that the court is looking at. And here, certainly it's not plain. And certainly when there are such powerful, compelling arguments in the other direction. And what role does complexity have in a lono prong to plane? I mean, does can can a very, very, very complex categorical approach involving amendments to a guideline against a backdrop of a statute that's been long established in looking at plain meaning of individual words and the modifiers. I mean, sooner or later, does complexity matter or do we just care if it's a pure question of law, then it can be playing. No, Your Honor. Well, absolutely not. The fact that it's simply a pure question of law cannot establish an error as plain that would swallow the plain error rule. I think complexity is very important. If you have a clear, if you have a clear, uniform statement of law, certainly from this circuit circuit, or perhaps from the overwhelming number of circuits on a complex question, that would make the airplane. But, but if you don't, and you have something that is this difficult and suggesting a result that that this that is this absurd. I think that does have a very important role to play. Thank you very much, and we'll hear from rebuttal from Mr Spicer. Thank you, Your Honors. I'd start by just mentioning. That is, of course, the case was not limited to coal as you had brought up. I would also point the court to, for instance, United States versus Evans 155 after 245, where it was this the situation was was even less clear in the sense that there weren't circuit other circuit rulings. There was in fact one other circuit that arguably went was inconsistent with what the Third Circuit eventually said was plain error on it on a basic statutory interpretation issue which is is like what we have here. But then, aside from that, if I could address the merits just for a moment. It's really important. I believe that we can't just throw things out there. No, it's not true that there's no extortion statute that would ever be covered. As, as Judge Krause, you mentioned that the oral argument in Rodriguez the Oregon statute appears to be divisible by type of threat. Any sort of divisible statute the Arizona statute extortion statute. Also, you know, this has all been this has all been covered, and this was all litigated by these very same parties in Rodriguez. And so it's not good enough to just to sort of come out with these blanket statements. Likewise, it's not, it simply is not the case that, of course, the Sentencing Commission didn't even think about this and they were totally blindsided. When, when the 2016 amendment began with a publication from the Sentencing Commission saying we're thinking about removing every property offense from the definition of crime of violence. That's 80 Federal Register 49317. Okay, this is not some, you know, I'm thinking, you know, crazy, who knows what, and we'll let the chips fall where they may situation. This was a carefully calibrated amendment process where they actually staked out a more aggressive ground, and then they cut them, then they, they split the baby essentially they pulled back on extortion. And then they introduced use of explosives, as an enumerated fence for offense for instance they retained arson. So there, there are some sort of property type crimes that the commission deemed were so dangerous that they should still be included, but extortion writ large. No. And again, everything. I asked Mr Zosmer about if Hobbs act robbery was not considered with the offense level, be 19. As what would it be 21. I do believe it would be 21, Your Honor, I will go back and double check that. But I believe we're in agreement with respect to that. If I can't say as I find the check, let us know if you agree that it should be 21, I will I would say that I would say that I don't think anything turns on that in terms of prong three or prong four of plain error Molina Martinez was Alice Maria Morales, both make clear that a wrongly calculated guidelines range ought to be sent back on plain error. So, again, on on prong to this court has always looked at the totality of the circumstances including other circuits. And in Evans Cole other cases, but also I don't think they did in Harris, I mean, in Harris. I've got it in front of me so I don't mean to sandbag you with something I happen to have in front of me but the quote I have is the Supreme Court has never ruled on the propriety of these questions and until neither until now neither his discord in a precedental opinion. And it, it doesn't do a survey of other circuits it basically said no Supreme Court ruling nothing precedental from this circuit. Granted, there was application of fact to law there it wasn't just a pure question of law, but, but, but in that context, not a pure question a lot necessarily at least. Maybe it was, I guess, but not, not quite this pure let's put it that way. That was that was all they that was all they looked at. There, there could be cases your honor I don't have Harris in front of me. I'm sorry. I should be aware of it but they're, they're, you're going to find you may find in the cases that this circuit, and other courts have in particular cases looked at different things, but, you know, whether you, whether you look at it through the lens of the prior precedent rule and the long standing. The long line of cases where this court has looked beyond its borders and beyond the Supreme Court. From that perspective in the prior president role, or just sort of common sense that this is, this is a totality analysis, where we're looking at is this sufficiently clear, and just because the methodology and I'll grant grant your honor the categorical approach can can you know have some blind alleys and be a little bit difficult to navigate, but the complexity of the methodology is one thing, the application in a particular case is something else. And here, this case. I'm so sorry, but but can I just push back on it because like plain air applies when there has been no objection. And so it strikes me that complexity is really really hard, just just in terms of like legal process, there's no objection, and then we say, Oh, we're going to reverse. Because, without any objection. The district judge trial judge should have engaged in a seven step element by element for an indivisible offense or this visible fence we have different analysis should have done all that complexity on the fly. Without the least bit of objection, and so it strikes me that when there's no objection, just as a practical matter. If something involves seven steps of legal gymnastics, some of which are counterintuitive. Maybe, at least to me, I'll speak just for myself, some of which are counterintuitive. It strikes me that we aren't giving the meaning that Supreme Court has said, plain means, which is obvious to to anyone in that courtroom, including the trial judge the defense counsel didn't object, and the trial judge was unable to do is I think most humans are a seven step. So a sponte legal analysis of a categorical approach. And it's hard in that context, if plain really does mean obvious to say that this was obvious there. What do you say, I say that's non bonk issue Your Honor I mean look at all, all the categorical approaches, usually more complex than this case, multiple Delaware state statutes about sex offenses and everything else. And, and, and that was not a barrier. So, so if if you're, if you if the court thinks that not sufficient weight is given to complexity and prong to is bound by this courts, how this court has dealt with raising an issue that that's waived the government put in a footnote in its brief, a brief mention of Stinson and didn't even argue it. They said that, you know, this might raise an issue under Stinson, we've been, we've been obviously as the court knows we've been litigating our office been litigating Kaiser for two years the government could have done it here, but it didn't, and we, and it's fine. But, but it's too late now in this case to raise that argument. Yeah. We should try to do you agree with Mr Zellzmer is take on plain error, that is we look to the reasoning and whether there's consistent reasoning among other circuits, not not simply to it the outcome. I know I don't think that is actually dispositive, maybe it comes into play a little bit in the sense of judge fits mentioning of complexity I mean if you have a I can imagine situation where if courts are all over the map in terms of how to get to a result that would suggest that the issues complex that you might weigh that in somewhat. But, but not here. You have one court that essentially defaulted to lenity. Another court held an alternative in an alternative holding and a belt and suspenders type of an opinion that well if you know it's clear, you know, but it would be like 82. And by the way, all the courts are all the circuits, all the courts in that circuit, citing that case cited for the primary holding. So, so I don't think it comes into play here and maybe in the marginal case it could have some way. But not here. And any further questions. If not, thank you to both counsel for as, as always, very well presented arguments, and we'll take the matter under advisement. Pleasure being with you. Thank you very much. Thank you.